JOHN J. COATES CO., ET AL. *v.* UNITED STATES (No. 4887) [1]

---

[1] C. A. D. 643.

United States Court of Customs and Patent Appeals, March 29, 1957

*Michael Stramiello, Jr.* for appellants.

*George Cochran Doub,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Alfred A. Taylor, Jr.* and *Richard H. Welsh,* trial attorneys, of counsel), for the United States.

[Oral argument February 13, 1957, by Mr. Stramiello, Jr. and Mr. Welsh]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal by the importers from the judgment of the United States Customs Court, Second Division, C. D. 1768, overruling the importers' protest without affirming the collector's classification. Part of the merchandise was classified by the collector as uncoated paper, embossed, within the provisions of paragraph 1405 of the Tariff Act of 1930 as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and the remainder as grease proof paper under the same paragraph as modified by the Annecy Protocol to said General Agreement, 84 Treas. Dec. 403, T. D. 52373, supplemented by Presidential Proclamations of April 27, 1950 (85 Treas. Dec. 116, T. D. 52462) and May 13, 1950 (85 Treas. Dec. 138, T. D. 52476). Neither party has appealed from the refusal of the lower court to sustain those classifications and accordingly they are not involved here.

It was alleged in the importers' protest that the merchandise

should have been classified under paragraph 1405 of the Tariff Act of 1930 as "vegetable parchment paper," either directly or by virtue of the similitude provisions of paragraph 1559 of the Act. The Customs Court overruled the protest and held that the merchandise was "Papers with coated surface or surfaces, embossed," provided for *eo nomine* in paragraph 1405 of the Act. Neither the importers nor the Government have questioned that holding, but it is the contention of the importers that the merchandise is also vegetable parchment paper, under paragraph 1405, and that such designation is more specific than the one selected by the Customs Court and should accordingly be controlling.

The pertinent portions of the applicable paragraphs are as follows:

Paragraph 1405, as modified by T. D. 51802, *supra.*

Papers with coated surface or surfaces, not specially provided for_____ 2½¢ per lb. and 7½% ad val.

Papers with coated surface or surfaces, embossed or printed otherwise than lithographically, and papers wholly or partly covered with metal or its solutions (however provided for in paragraph 1405, Tariff Act of 1930), or with gelatin, linseed oil cement, or flock; uncoated papers, including wrapping paper, with the surface or surfaces wholly or partly decorated or covered with a design, fancy effect, pattern, or character, except designs, fancy effects, patterns or characters produced on a paper machine without attachments, or produced by lithographic process; any of the foregoing, whether or not embossed, whether or not printed otherwise than lithographically, and whether or not wholly or partly covered with metal or its solutions, or with gelatin or flock_____ 4½¢ per lb. and 10% ad val.

\*        \*        \*        \*        \*        \*        \*

Vegetable parchment paper_____ 1¢ per lb. and 5% ad val.

Paragraph 1405, as modified by T. D. 52373, as supplemented, *supra*:

Grease-proof and imitation parchment papers which have been supercalendered and rendered transparent or partially so, by whatever name known, and all other grease-proof and imitation parchment paper, not specially provided for, by whatever name known_____ 1½¢ per lb. and 7½% ad val.

Paragraph 1559.

That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; \* \* \*. If two or more rates of duty shall be applicable to any imported article, it shall be subject to duty at the highest of such rates.

No testimony was taken but the parties entered into a stipulation which recites the following agreed facts:

1. The merchandise covered by the protests listed in "Exhibit X", attached hereto and made a part hereof, consists of paper imported by the plaintiffs herein and was classified by the Collector of Customs at the port of New York as "uncoated paper, embossed" or as "grease-proof paper" under the provisions of paragraph 1405 of the Tariff Act of 1930, as amended and modified, and duty was assessed thereon at the appropriate rates provided in said paragraph.

2. Subject to the approval of the Court, the protests listed in said "Exhibit X" are amended so that all claims made therein are abandoned except the claim that the merchandise covered thereby is classifiable as "vegetable parchment paper" under the provisions of paragraph 1405 of the said Act, or in the alternative, is dutiable as "vegetable parchment paper" in said paragraph 1405 by virtue of the similitude provisions of paragraph 1559 of said Act, and to include said claims in any of the said protests in which said claims have not been made.

3. The merchandise covered by the protests as aforesaid was manufactured by the following process: cellulose fiber sheets, the same in all material respects as "Exhibit A" were embossed on embossing machines to produce a design and effect previously determined, resulting in embossed sheets which were the same in all material respects as "Exhibit B"; said embossed sheets were stored for several weeks to permit the embossing impressions to become fixed and to dry; the dried sheets were then immersed in a solution of sulphuric acid for the purpose of parchmentizing the sheets; the sheets so embossed and parchmentized were then immersed in successive baths of a resinous solution to permeate and coat the sheets therewith; the sheets were then hung on racks for 10 to 14 days for drying, after which they were wound into rolls or cut into sheets of predetermined sizes, in which condition they were imported into the United States; "Exhibit C" is a sample of said merchandise as imported.

4. The said imported merchandise was sold to manufacturers of lampshades within the United States who manufactured them into lampshades.

5. Tests to determine the water and grease resistance of samples taken of the imported merchandise were made by the Electrical Testing Laboratories, Inc., located at 2 East End Avenue, City and State of New York; the results of said tests showing the degree of resistance to water and grease of the imported merchandise appear in "Exhibit D"; Said results are within the limits of water and grease resistance for vegetable parchment paper.

It was held by the Customs Court that when the merchandise had been subjected to the steps set forth in paragraph 3 of the above stipulation up to and including immersion in and removal from the sulphuric acid solution, it was vegetable parchment paper, embossed.

In the brief for the Government, it is pointed out that a vegetable parchment paper, according to dictionary definitions and legislative history, is an unsized paper made of rags, vegetable fiber or wood pulp, and it is noted that the stipulation does not state what was the source or substance of the cellulose fiber sheets, designated "A" which were stipulated to be the same as those from which the instant merchandise was prepared. However, rags, vegetable fiber and chemical wood pulp are the most common sources of the cellulose fibers of which paper is made, and a pamphlet offered as the importers' Exhibit E and entitled, "The Story of Vegetable Parchment" states

that such parchment "starts out as a tree" and "goes through the normal pulping, bleaching and paper-making processes until the final paper, a soft highly absorbent sheet known as *waterleaf* is produced." Exhibit A appears to possess those qualities since it is soft and is evidently highly absorbent as indicated by the fact that it is permeated by resin solution as stated in the stipulation. Exhibit A shows no indication of having been sized and clearly has not been sized to any substantial extent, since it is quite absorptive, whereas sizing reduces the absorptiveness of paper.

While the stipulation does not spell out in so many words the manner in which Exhibit A was prepared, we are of the opinion that it, together with an inspection of the exhibit itself, is sufficient to satisfy the requirements as to the base paper from which vegetable parchment may be made, and that the record therefore supports the holding of the Customs Court that paper such as Exhibit A after the sulphuric acid treatment, became vegetable parchment paper. It is to be noted that paragraph 3 of the stipulation states that the sulphuric acid treatment was "for the purpose of parchmentizing the sheets," which would indicate that a parchment paper was produced at that stage.

The Customs Court further held that the permeation and coating of the paper described in paragraph 3 of the stipulation caused it to become something more than and different from vegetable parchment paper. In reaching that conclusion the court relied primarily on the case of *United States* v. *Agents for Kearfott Engineering Co.*, 21 C. C. P. A. (Customs) 264, T. D. 46790, in which it was held that brass channels lined with felt and dedicated to use in connection with windows were not dutiable as brass channels. That case in turn, relies on *Hirsch & Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 82, T. D. 33365, in which nickel plated steel strips were held not to be dutiable as strips of steel since "It can hardly be doubted that some change in the classification and assessment of the article must follow upon such a substantial change in its component materials, its use, and value"; and on *United States* v. *Strauss & Buegeleisen*, 20 C. C. P. A. (Customs) 378, T. D. 46184, in which small glass disks "dedicated to the single use of making goggles" were held to be "something more than plain glass."

On the other hand in *United States* v. *Globe Shipping Co., Inc.*, 31 C. C. P. A. (Customs) 95, C. A. D. 254, it was held that steel sheets lacquered on one side but not dedicated to any single use were properly classifiable as steel sheets.

It is clear from the foregoing decisions that whether an article which, at one stage of its production, is appropriately classified under a particular designation, has been so altered by subsequent operations that that designation is no longer appropriate, is a question of fact depending on the circumstances of each individual case.

The decisions indicate that a change in use or dedication to a particular use, if not controlling, is at least an important factor in determining whether a new article has been produced. In the instant case, there is nothing to show that the resin treatment of the paper effected a change in its use or dedicated it to any particular use. On the contrary, the stipulation states that the finished paper was manufactured into lamp shades, and Exhibit E states that one of the uses of vegetable parchment is in lamp shades.

It is, moreover, stated in the stipulation that the water and grease resistance of the imported merchandise have been tested and found to be within the limits of those of vegetable parchment paper; and the stipulation contains nothing to show what differences, if any, there are between such merchandise and vegetable parchment paper.

It is true, as pointed out by the Customs Court, that treatment with resin is not a usual or necessary step in the production of vegetable parchment paper, but it does not necessarily follow from that fact that such paper loses its identity when treated with resin, any more than the steel sheets in the *Globe Shipping Co., Inc.* case, *supra,* lost their identity when lacquered on one side.

Since it does not appear that the resin treatment of the merchandise here involved produced any significant change in its physical characteristics or utility, we are of the opinion that such merchandise continued to be vegetable parchment paper after that treatment. *Nootka Packing Co. et al.* v. *United States,* 22 C. C. P. A. (Customs) 464, T. D. 47464. While the merchandise is also "Papers with coated surface or surfaces, embossed" within the meaning of paragraph 1405 of the Tariff Act of 1930, it is well settled that where two different classifications are possible, the more specific one will govern, *Sandoz Chemical Works, Inc.* v. *United States,* 43 C. C. P. A. (Customs) 152, C. A. D. 623. Since vegetable parchment paper is paper of a particular kind and prepared by a particular process, that designation is clearly more specific than "Papers with coated surface or surfaces embossed" and the importers' protest should accordingly have been sustained.

The judgment of the United States Customs Court is *reversed.*

JACKSON, J., Retired, recalled to participate herein in place of COLE, J., absent because of illness.